## STATE OF CONNECTICUT *v.* MARK SIMINO
## (12095)

HEALEY, DANNEHY, SANTANIELLO, CALLAHAN and SHAUGHNESSY, Js.

Argued February 5—decision released June 3, 1986

*Timothy H. Everett,* with whom, on the brief, were *Mary Futcher* and *Matthew Newman,* legal interns, for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attor-

ney, and *Dennis O'Connor* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Mark Simino, was found guilty after a jury trial of the crimes of larceny in the second degree by possession in violation of General Statutes § 53a-123 (a) (2)[1] and conspiracy to commit larceny in the second degree by possession in violation of General Statutes §§ 53a-48[2] and 53a-123 (a) (2). He appeals the judgment of conviction and claims that: (1) the trial court erred in denying his motions for judgment of acquittal; (2) there was insufficient evidence to establish the value of the property involved as required by statute; (3) the trial court should have sustained the defense objections to the state's rebuttal; and (4) the trial court erred in finding that the defendant had waived his federal and state constitutional rights to be present during the jury instructions.

The jury could reasonably have found the following facts: On September 20, 1982, two pieces of wire wicker furniture, a couch and a chair with cushions were removed from the front porch of the home of Joseph and Marie Mastronardi in Hartford. Joseph Mastronardi saw the furniture on his porch at about 1 a.m. on September 20, 1982. He walked his dog from approximately 7:15 to 8 a.m. that same day and did not notice anything unusual at that time. As he backed his car out of the driveway at 8:10 a.m., he saw pillows from the furniture on the front lawn, exited his

---

[1] General Statutes (Rev. to 1981) § 53a-123 (a) (2) provides: "LARCENY IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of larceny in the second degree when . . . (2) the value of the property or service exceeds five hundred dollars."

[2] General Statutes § 53a-48 provides in part: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

car and tossed the pillows onto the porch and realized that the furniture was missing. He drove to work, called his wife at home to confirm his discovery, and called the police. Marie Mastronardi, after a conversation with a detective from the Hartford police department, called used furniture stores to determine if her furniture had been sold to such a shop. She located the furniture at the first store she called, Able Sam and John's of Hartford. She gave the storeowners a check as a deposit on the furniture and she again contacted the police. A search warrant was obtained and executed on the store, and the furniture was recovered. The store is about two and one-half miles from the Mastronardi residence.

It was stipulated at trial that the defendant was in the store at the time the sale of this furniture by Thomas Mora[3] took place and that the defendant was arrested in connection with the transaction. Mora had telephoned the defendant on the morning of September 20, 1982, and told him that he had bought it from a man, who had the furniture in his car on Farmington Avenue, for $25. Shortly thereafter that same morning, the defendant and Mora attempted to sell the furniture to a gas station attendant and to a man in a pizza shop on their way to Able Sam and John's.

Glen Frazier, a part owner of Able Sam and John's, was doing paperwork in the store when the defendant and Mora arrived at approximately 8:45 a.m. on September 20, 1982, at which time the defendant stated that they had some wicker furniture for sale. Frazier told them to come back later because the store was closed. The pair came back to the store about fifteen minutes later and asked Frazier to look at the furniture which was in the basement of Mora's mother's house. Because Frazier was alone in the store at the

---

[3] Thomas Mora was arrested in connection with the sale of this furniture, pleaded guilty, and received a sentence of eighteen months.

time, he told them they would have to wait until his partner returned with his truck. Approximately fifteen to twenty minutes later, the defendant and Mora returned with the furniture and the store partners agreed to buy the two pieces for $125 and paid the money to Mora who signed a false name to a receipt for the property. The defendant was about five feet from Mora when he signed the receipt. Mora paid forty or fifty dollars of this money to the defendant for a prior debt. Other evidence before the jury, which is relevant to the disposition of the issues on appeal, will be discussed below.

The defendant's first claim on appeal is that the trial court erred by denying his motions for judgment of acquittal because the state failed to establish that the defendant actually knew or believed that the two pieces of furniture had probably been stolen, an essential element of General Statutes §§ 53a-123 (a) (2) and 53a-119 (8).[4] The defendant made oral motions for judgment of acquittal as to both counts of the information after the state had rested and at the close of all the evidence, and after each denial by the trial court he took an exception.

When a claim on appeal challenges the sufficiency of the evidence, we undertake a two-part task. "We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the

_____

[4] General Statutes (Rev. to 1981) § 53a-119 provides in relevant part: "LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes but is not limited to . . .

"(8) Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner."

facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984)." *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985); see *State* v. *McCarthy,* 197 Conn. 166, 178, 496 A.2d 190 (1985).

In reviewing the evidence presented, "it is of no moment that much of the relevant evidence may be circumstantial." *State* v. *Braxton,* supra. "We also note, as we have often said, that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned." *State* v. *Haddad,* 189 Conn. 383, 390, 456 A.2d 316 (1983). "It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. *State* v. *Gaynor,* 182 Conn. 501, 438 A.2d 749 (1980); *State* v. *Brown,* 168 Conn. 610, 616, 362 A.2d 910 (1975); *State* v. *Walters,* 145 Conn. 60, 69, 138 A.2d 786 (1958)." *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981).

In reviewing the evidence in this case, it should be noted that " '[a]ctual knowledge that the property has been stolen is necessary, but the trier "would not be justified in finding knowledge unless the facts referred to were such that a reasonable man—the accused as a reasonable man—should have inferred and gathered from them knowledge that the goods were stolen." *State* v. *Weiner,* 84 Conn. 411, 418, [80 A. 198 (1911)].' *State* v. *Appletree,* [35 Conn. Sup. 531, 534, 394 A.2d 744 (1977)]." *State* v. *Scielzo,* 190 Conn. 191, 198–99, 460 A.2d 951 (1983).

The defendant claims that both motions for judgment of acquittal are reviewable on appeal and that the sufficiency of the evidence should be evaluated after the state rested its case and after all the evidence had been heard. In *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984), we stated that "[u]nder the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without foregoing the right to put on evidence in his or her own behalf. . . . If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto." The defendant in this case elected to present a defense and under the waiver rule, we decline to review the trial court's ruling on the motion after the state has rested its case.[5] We now look at the evidence in toto in order to review the trial court's ruling on the motion for judgment of acquittal after all the evidence had been presented.

There was also the following evidence before the jury: Early in the morning of September 20, 1982, the defendant received a telephone call from Mora in which Mora told him that he had bought some wicker furniture as a gift for his mother. When Mora told the defendant that he had only paid $25 for it, the defendant told him that he "got a bargain" and he inquired of Mora at least twice if he was sure that the furniture did not belong to his mother. When Mora was informed by the defendant that he "could get a couple hundred dollars for it," Mora asked the defendant "where [they] could go" and the defendant suggested Able Sam and John's, a store with whom he had previously done busi-

[5] Although we recognize that there is "growing criticism of the waiver rule"; *State* v. *Duhan*, 194 Conn. 347, 352, 481 A.2d 48 (1984); this is not an appropriate case in which to change the waiver rule "because, even if the defendant's claim were properly here, he could not prevail." *State* v. *Rutan*, 194 Conn. 438, 444, 479 A.2d 1209 (1984); see *State* v. *Lizzi*, 199 Conn. 462, 464–65, 508 A.2d 16 (1986).

ness. On their way to the store, the pair stopped at a gas station and a pizza house in an attempt to sell the furniture. When they arrived at the store, it was not yet open for business and the pair was told to return, and they did so twice within the next thirty minutes. The defendant, on the third visit, actively participated in negotiating the sale price of $125 although Marie and Joseph Mastronardi and Richard Wacht, an auctioneer, testified that the value of the property taken was between $600 and $1000. After the defendant negotiated the price and the store owners paid Mora, Mora paid the defendant "forty or fifty" dollars because Mora owed him fifty-seven dollars that the defendant had recently paid to a bail bondsman on Mora's behalf. In the presence of the defendant, Mora signed a false name to the receipt because he was "under the impression that [the property] was stolen."

The evidence in toto, as reviewed above, was sufficient for a jury reasonably to conclude that the defendant probably knew or believed that the furniture was stolen. As we stated in *State* v. *Fredericks,* 149 Conn. 121, 124, 176 A.2d 581 (1961), "[o]rdinarily, guilty knowledge can be established only through an inference from other proved facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable man of honest intentions, in the situation of the defendant, would have concluded that the property was stolen. *State* v. *Heno,* 119 Conn. 29, 32, 174 A. 181 [1934]; *State* v. *Weiner,* 84 Conn. 411, 417, 80 A. 198 [1911]." See *State* v. *Gabriel,* 192 Conn. 405, 412, 473 A.2d 300 (1984). There was a sufficient basis in the facts established by the cumulative evidence from which the jury could logically infer and on which they could properly rely to predicate their verdicts of guilty of larceny by possession and conspiracy to commit larceny by possession. The trial court did not err in denying the defendant's motion for judgment of acquittal.

The defendant's second claim is that the state failed to introduce sufficient evidence to support a finding by the jury that the value of the property received by the defendant exceeded $500 as required by General Statutes (Rev. to 1981) § 53a-123.[6] The defendant claimed that the evidence introduced at trial to establish the element of value was "inconclusive and conflicting." The state was required to prove the value of the property by ascertaining its market value "at the time and place of the crime." General Statutes § 53a-121 (a) (1). It is a long established rule that the "[t]estimony of the [owner] as to the value of the [personal property] was proper, although no qualification other than his ownership of it was shown." *Saporiti* v. *Austin A. Chambers Co.,* 134 Conn. 476, 479–80, 58 A.2d 387 (1948); *Griffin* v. *Nationwide Moving & Storage Co.,* 187 Conn. 405, 422, 446 A.2d 799 (1982); see *McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 41, 440 A.2d 801 (1981); 3 Wigmore, Evidence (Chadbourn Rev.) § 716.2. "The rule establishing an owner's competence to testify reflects both . . . the common experience that an owner is familiar with her property and knows what it is worth. *Casada* v. *Hamby Excavating Co.,* 575 S.W.2d 851, 854 (Mo. App. [1978]). This rule is applicable in criminal as well as civil cases." (Citations omitted.) *State* v. *Baker,* 182 Conn. 52, 60–61, 437 A.2d 843 (1980); see *Shane* v. *Tabor,* 5 Conn. App. 363, 364, 497 A.2d 1047 (1985).

The state introduced evidence of the fair market value of the two stolen pieces of wicker furniture through Joseph and Marie Mastronardi, the owners,

[6] The defendant did not raise this issue below and ordinarily it would not be reviewable on appeal. His claim, however, falls within the second exceptional circumstance of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), because proof beyond a reasonable doubt of all the elements of a crime, here the $500 value requirement, is a fundamental constitutional right. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Scielzo,* 190 Conn. 191, 204, 460 A.2d 951 (1983).

and through Richard Wacht, an antique dealer and auctioneer. Joseph Mastronardi testified that the market value of the wicker couch and chair on September 20, 1982, was $800. He testified that he was "familiar" with wicker furniture "through shopping and looking at other wicker furniture." He also testified that three of the four custom-made cushions for the couch and chair were also taken and that the cost in 1975 of the foam, material and labor for six cushions and pillows for a three-piece set was between $175 and $250. Joseph Mastronardi was unable to assign a value to the cushions on just the couch and chair. Marie Mastronardi testified that for three pieces of wicker furniture, including the stolen couch and chair, the foam for the cushions cost $80 to $100, the fabric cost $80, and the upholsterer charged $60. Marie Mastronardi testified that the condition of the set in 1975 was "excellent structurally" and was in "excellent condition" and that she had been "very careful with the set and very diligent about keeping it up." After the state offered the wicker chair and couch as full exhibits, Marie Mastronardi testified that the furniture now had "some nicks and scrapes" that were not there the last time she had seen the furniture. She testified that the market value on September 20, 1982, of the two pieces of furniture in evidence, the couch and chair, was approximately $1000.

The state also called Richard Wacht, an auctioneer and antique dealer in Connecticut for approximately twenty-four years. Wacht sells wicker furniture sets at auction and has appraised wicker for individuals, an insurance company, and a bank. After testifying that there had been no fluctuation in the market value of wire wicker from the date of the theft until the day of trial, Wacht stated that the value of the wicker furniture was between $125 and $175 for the chair and between $300 and $425 for the sofa. On cross-

examination Wacht testified that the two low figures given for the sofa and chair would be the wholesale price, "a figure on which [he] would pay." The "top end" prices given on direct examination would be retail prices. The trial court then questioned Wacht as to the fair market value of the items and Wacht further clarified the prices that he had given as within the range of $150 to $175 for the chair and $350 to $450 for the sofa at auction, depending "on the level of the people there that evening."

The jury was presented with three sets of figures from Marie and Joseph Mastronardi and Richard Wacht reflecting the fair market value of the furniture. The two pieces of furniture were introduced as exhibits at the trial. Although the three witnesses were not in agreement, the jury was free to weigh the evidence presented to it and to judge the credibility of the witnesses. From the evidence presented at trial, the jury could reasonably have concluded that the value of the Mastronardis' wicker furniture exceeded $500. See *State* v. *Collette,* 199 Conn. 308, 507 A.2d 99 (1986); *State* v. *Taylor,* 196 Conn. 225, 231, 492 A.2d 155 (1985).

The defendant's third claim is that the trial court abused its discretion in admitting the testimony of the state's rebuttal witness because it was irrelevant and because the testimony did not contradict any testimony presented by the defendant. The state called as a rebuttal witness Robert LaMarche, an attorney who is employed as a clerk in Superior Court. The witness testified to the mechanics surrounding a cash bail bond. The state argued, after the defendant objected, that the rebuttal testimony "goes to the issue of whether or not there was a prior debt." The defendant earlier had testified that he had posted a $500 cash bail bond on September 17, 1982, but that on Mora's court date he decided to employ a professional bondsman rather

than leave his $500. The defendant testified that the bondsman charged him fifty-seven dollars for a surety bond which he paid out of the money he received from the release of the cash bond.

Rebuttal evidence is usually "confined to testimony which is directed at refuting the evidence given by the defendant"; *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975); or is "in general contradiction of the testimony given by the defendant . . . ." *State* v. *Fine,* 159 Conn. 296, 301, 268 A.2d 649 (1970). "The admission of rebuttal evidence is ordinarily within the sound discretion of the trial court. See, e.g., *State* v. *Nims,* 180 Conn. 589, 599, 430 A.2d 1306 (1980); *State* v. *Palozie,* 165 Conn. 288, 299, 334 A.2d 468 (1973); *State* v. *Leopold,* 110 Conn. 55, 67, 147 A.2d 118 (1929)." *State* v. *Lisella,* 187 Conn. 335, 337, 445 A.2d 922 (1982). In addition, a "trial court has wide discretion in its rulings on relevancy of evidence." *State* v. *Palozie,* supra. The issue of whether a prior debt even existed and how it arose was introduced by the defendant to explain why he received money from Mora from the sale of the furniture, although Mora only testified that he paid the defendant for "helping out" with the sale. The real reason why the defendant was paid by Mora for his connection with the sale is related to the main issue in the case, whether the defendant probably knew or believed the furniture was stolen. "If the issue was in the case, the evidence was highly relevant." *Reboni* v. *Case Bros., Inc.,* 137 Conn. 501, 508, 78 A.2d 887 (1951). The trial court could reasonably have concluded that this evidence was relevant to the issue of prior debt and to explain the two bond documents that had already been admitted into evidence by the defendant which show that the defendant received a $500 check from the court clerk and that a professional bondsman posted a surety bond. The documents do not show, although the defendant so tes-

tified, that it was he who paid any fees to the professional bondsman for the surety bond.

Even if we were to assume that the rebuttal testimony was not relevant nor in contradiction to the evidence presented by the defendant, "[we] note that the defendant's claim does not involve the violation of a constitutional right and, hence, the burden rests upon the defendant to demonstrate the harmfulness of the court's error. See *State* v. *Pepe,* 176 Conn. 75, 81, 405 A.2d 51 (1978); *State* v. *Sorbo,* 174 Conn. 253, 257, 386 A.2d 221 (1978). . . ." *State* v. *Ruth,* 181 Conn. 187, 197, 435 A.2d 3 (1980); see *State* v. *Addazio,* supra.

The defendant claims that the error was not harmless because the rebuttal testimony "may well have confused and misled the jury" and because it may have led the jury to assume that the rebuttal testimony was relevant. After a thorough review of the transcript, we cannot agree that it demonstrates that "confusion . . . accompanied the presentation of this testimony." We have also already concluded that it was well within the trial court's discretion to consider this testimony to be relevant. The defendant has not sustained his burden of demonstrating the harmfulness of the alleged error.

The defendant's final claim is that the trial court erred in instructing the jury in the absence of the defendant when the defendant had not waived his right to be present as guaranteed by article first, § 8, of the state constitution and the sixth and fourteenth amendments to the federal constitution. The defendant claims that this issue is reviewable on appeal although no objections were taken to the commencement of the jury instructions by the trial court or to the substance of the jury instructions now or at trial. We agree with the defendant that this claim is reviewable under the sec-

ond exceptional circumstance of *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), because the defendant's fundamental constitutional right to a fair trial is implicated.

The trial court, before the jury was brought in for instructions, noted that the defendant had not yet arrived. The state's attorney asked defense counsel, "on record whether or not his client has, pursuant to the Practice Book, agreed to waive his right to be present for this charge?" Defense counsel answered: "Well, I can't make any representation on that, your Honor. I instructed him to be here and not be late." Defense counsel did not, however, object to the trial court's proceeding to instruct the jury. The trial court made a finding that "[the defendant] was told to be here yesterday and it is now 10:25, he was told we would commence the charge at ten o'clock, the Court will find that he has, by not being here, waived his right by his actions of not being here." The transcript reveals that by 11:23 a.m. the defendant had still not appeared in court.[7] At 12:11 p.m. when the jury announced its verdict, the defendant was present in the courtroom.

A criminal defendant has a constitutional right to be present at all critical stages of his trial. *Rushen* v. *Spain*, 464 U.S. 114, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983); see *Illinois* v. *Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353, reh. denied, 398 U.S. 915, 90 S. Ct. 1684, 26 L. Ed. 2d 80 (1970). While we have said that "[a]s a general rule, an accused has a constitu-

---

[7] After the court had charged the jury and the jury had just begun deliberations, the following colloquy took place between the trial court and the defense:

"The Court: Now, I would suggest, you might try to contact Mr. Simino. I know you haven't had a chance to do it while we have been here. As far as you knew, I assume, he was going to be here, is that correct?

"Mr. DeCaprio: Well, I did instruct him, as I said, to be here at ten. I don't know.

"The Court: All right.

"Mr. DeCaprio: I will try to call him, I have a phone number."

tional right to be present at all stages of his trial," we have also said that "[t]he question should be whether the defendant's presence bears 'a relation, reasonably substantial, to his opportunity to defend.' *Snyder* v. *Massachusetts,* 291 U.S. 97, 106, 54 S. Ct. 330, 78 L. Ed. 674 [1934]." *State* v. *Olds,* 171 Conn. 395, 405, 406, 370 A.2d 969 (1976). This right to be present at trial may be waived by the defendant or the judicial authority may "[d]irect that the trial or a part thereof . . . be conducted in his absence if the judicial authority determines that he waived his right to be present." Practice Book § 968 (1) and (2); *State* v. *Parham,* 174 Conn. 500, 506, 391 A.2d 148 (1978).

The two questions that must be addressed in order to dispose of this issue are: (1) whether a criminal defendant's constitutional right to be present at "all stages of his trial" includes the instructions to the jury; and if so, (2) whether the defendant effectively waived his right to be present by his unexcused absence.

The defendant claims that his constitutional right to be present at trial is an "essential concomitant of [his] right to effective assistance of counsel"; *United States* v. *Washington,* 705 F.2d 489, 497 (D.C. Cir. 1983); and is "rooted in the right of confrontation" as well as an "essential component of due process of law applicable to the states through the fourteenth amendment." The defendant argues that his constitutional right to be present may be waived by a "voluntary and deliberate absence from the trial without good cause, or by his conduct or misconduct," but that the trial judge failed to determine whether his absence was voluntary and that it did not consider other possible alternatives before "waiving" his right to be present. The state contends that it is "[a]ssuming only for the sake of argument that the defendant had a fundamental right to be present for jury instruction. . . . " In addition, the state claims that the defendant has presented "no

authority holding that the jury charge is a 'critical stage' of trial at which the defendant's presence is always required by due process." The state cites *Snyder* v. *Massachusetts,* 291 U.S. 97, 107, 114–15, 54 S. Ct. 330, 78 L. Ed. 674 (1934), in arguing that the defendant's right to be present at the jury charge cannot be considered an aspect of the right to confrontation contained in the sixth amendment and should only be analyzed as a due process claim. The state contends that "of all the stages of trial, the purely legal charge to the jury is least likely to be affected by the defendant's presence" because it is "no place for intuition, but [is a place] for legal training."

A defendant's right to be present at all stages of his trial is "scarcely less important to the accused than the right of trial itself." *Diaz* v. *United States,* 223 U.S. 442, 455, 32 S. Ct. 250, 56 L. Ed. 500 (1912). "The trial as respects the prisoner's right of presence in the constitutional sense, does not include the formal procedure of indictment or preliminary steps antecedent to the hearing on the merits, or stages of the litigation after the rendition of the verdict, but does comprehend the inquiry by the ordained trier of fact from beginning to end." *Snyder* v. *Massachusetts,* supra, 129 (Roberts, J., dissenting); see *Shields* v. *United States,* 273 U.S. 583, 588–89, 47 S. Ct. 478, 71 L. Ed. 787 (1927). It has been said that the term "trial" should be considered in context and in connection with the particular matter to which it relates as it has different meanings. 88 C.J.S., Trial § 1. A "trial by jury" has been said to "comprehend a full and fair hearing upon all relevant issues where all questions of fact presented by the testimony are decided by the jury in accordance with the principles of law given to them by instructions of the judge." *New England Novelty Co.* v. *Sandberg,* 315 Mass. 739, 750, 54 N.E.2d 915, cert. denied, 323 U.S. 740, 65 S. Ct. 63, 89 L. Ed. 593 (1944).

We have previously ruled that a defendant does not have an absolute right to be present during a discussion of questions of law. *State* v. *Olds,* supra. Implicit, however, in the federal and state constitutional guarantee of the criminal defendant's right to be present at all stages of a trial is the right to be present during the court's instructions to the jury unless waived. The defendant's right to be present at the jury instructions is an important one because it is during the instructions that the "court is required to state the fundamental legal principles applicable to criminal cases generally, as well as the material legal principles applicable to a particular case and the application of the law to the facts. . . . " *People* v. *Ciaccio,* 47 N.Y.2d 431, 436, 391 N.E.2d 1347, 418 N.Y.S.2d 371 (1979). Despite the state's claim that "the jury is least likely to be affected by the defendant's presence" at this stage of the proceedings, it does not alter his right to be present as the instructions are given unless that right is waived.

Although we conclude that the defendant did have a state and federal constitutional right to be present during jury instructions, this right is not absolute. Despite the constitutional right to be present, "there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by the conduct of [an] accused that prevents the trial from going forward." *Illinois* v. *Allen,* supra, 349 (Brennan, J., concurring). Not only may an accused waive his right to presence by his misconduct as in *Illinois* v. *Allen,* supra, but he may also do so by simply failing to show up for the trial through no fault of the state. *Diaz* v. *United States,* supra; see also *United States* v. *Martinez,* 604 F.2d 361 (5th Cir. 1979), cert. denied, 444 U.S. 1034, 100 S. Ct. 708, 62 L. Ed. 2d 671 (1980) (defendant disappeared after trial had begun, evidence had been taken and he had been warned of the importance of his presence). In any event, this right,

like other rights, is not absolute. See, e.g., *Heiligh* v. *United States,* 379 A.2d 689, 693 (D.C. App. 1977). In *Snyder* v. *Massachusetts,* supra, 105–106, the United States Supreme Court stated: " '[I]n a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.' " *Talton* v. *Warden,* 171 Conn. 378, 382, 370 A.2d 965 (1976). We have noted that "[t]he basis and extent of the [fourteenth amendment] right, however, are the subject of some confusion." Id., 381. "The problem . . . is not so much defining the authority for the right as it is establishing to what extent the right of presence attaches when witnesses are not being questioned." Id., 383. Thus, a defendant may waive this constitutional right and the question becomes whether that right was effectively waived by his absence. See *State* v. *Parham,* supra, 505. Nevertheless, the right must be carefully safeguarded. *United States* v. *Tortora,* 464 F.2d 1202, 1209 (2d Cir.), cert. denied sub nom. *Santora* v. *United States,* 409 U.S. 1063, 93 S. Ct. 554, 34 L. Ed. 2d 516 (1972). "[W]hether there has been an intelligent and competent waiver of the right to presence 'must depend, in each case, upon the particular facts and circumstances surrounding that case.' *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 [1938]." *Talton* v. *Warden,* supra, 385. "[A] waiver of the right to be present at a criminal trial may be inferred from certain conduct engaged in by the defendant after the trial has commenced." *People* v. *Parker,* 57 N.Y.2d 136, 139, 440 N.E.2d 1313, 454 N.Y.S.2d 967 (1982).

The transcript in this case reveals that defense counsel advised the defendant to appear in court and "not be late" and that the court also told the defendant the day before that the charge to the jury would commence

"first thing tomorrow morning at ten o'clock." The defendant's case had then been on trial for four days and all the evidence had been presented, including his own testimony. The defendant thus had sufficient notice of the time and location of the instructions to the jury and that his presence was requested. We note that his trial took place in Hartford at a time that he resided in the neighboring town of West Hartford.

The defendant claims that an implicit waiver from absence is not sufficient to waive a constitutional right and that, in this case, there was no indication that the absence was voluntary. Under Practice Book § 968, the trial court is authorized to direct the trial or a part thereof to be conducted in the absence of the defendant who is represented by counsel if the court determines that he has waived his right to be present. The trial court found, under the circumstances, a waiver by the defendant's unexplained absence. See, e.g., *United States* v. *Reed,* 639 F.2d 896 (2d Cir. 1981); *United States* v. *Martinez,* supra; *United States* v. *Tortora,* supra; *Maupin* v. *State,* 694 P.2d 720, 722 (Wyo. 1985). In *United States* v. *Davis,* 486 F.2d 725, 726–27 (7th Cir. 1973), cert. denied, 415 U.S. 979, 94 S. Ct. 1569, 39 L. Ed. 2d 876 (1974), the defendant was directed to be in court at 10 a.m. for the continuation of his trial and at 10:20 a.m. he had not yet arrived. The defendant's mother advised the court at that time that her son had left home, presumably at or before the time that she had. The court found that the defendant had "voluntarily absented himself from the courtroom" and ordered that the trial proceed. Id., 726. The Court of Appeals found no abuse of the trial court's discretion in determining that the trial should continue. Id., 727. In the present case, the defendant's absence occurred during the instructions to the jury, unlike *United States* v. *Davis,* supra, in which the defendant's absence occurred during the presentation of the state's case.

In addition, the trial court below cautioned the jury that it was to draw "no inferences or any conclusions from that, one way or the other. . . . He may have been held up in traffic, nobody knows. He maybe couldn't find a place to park, which is also very understandable." There is nothing in the record to rebut the presumption that the jury did not follow the instructions of the court. *State* v. *Glenn,* 194 Conn. 483, 497, 481 A.2d 741 (1984). Nevertheless, the defendant cites this instruction as evidence that the trial judge could not conclude that the absence was voluntary. It is reasonable to assume that a defendant who had attended his trial for several days and had knowledge of the date and time of its continuance would know that " 'as a consequence the trial could continue in his absence.' " *Taylor* v. *United States,* 414 U.S. 17, 20, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973), quoting *United States* v. *Taylor,* 478 F.2d 689, 691 (1st Cir. 1973). In *Taylor* v. *United States,* supra, 19, the United States Supreme Court rejected the accused's claim that "his mere voluntary absence" from his trial could not be construed as an effective waiver. In that case, the court held that it was not necessary to the finding of a waiver that he should have been "expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence . . . ." Id. The defendant, in asserting this right, overlooks the correlative duty which he had, as one at liberty on bail, to be present. Id., 20; *Heiligh* v. *United States,* supra; see *Stack* v. *Boyle,* 342 U.S. 1, 4–5, 72 S. Ct. 1, 96 L. Ed. 2 (1951). The court's hypothetical explanations, moreover, of the defendant's absence to the jury do indicate a "voluntary" absence by the defendant. We note that the record does not disclose any effort to explain the defendant's absence. The "exigencies" cited by the court did not require the court to delay its instructions to the jury. A defendant is constitution-

ally guaranteed only the right to have the opportunity to be present at all stages of his trial. The defendant had the opportunity in this case and did not responsibly utilize it. When the defendant arrived in court after the jury had already been instructed, defense counsel stated for the record that the defendant "didn't have transportation to court, his ride didn't show up. He ended up having to take a bus down here." This excuse for his tardiness does not impact on the reasonableness of the trial court's exercise of its discretion in finding that the defendant had voluntarily absented himself from the trial.[8] See *United States* v. *Raper,* 676 F.2d 841, 845–46 (D.C. Cir. 1982).

An important consideration in our conclusion that there was no error to proceed with the jury instructions is the stage of the trial during which he was absent. Jury instructions, as we have already noted, are an important part of any trial. Nevertheless, in the context of the defendant's constitutional rights to confrontation and due process, his absence during this stage "did not have a substantial effect upon his opportunity to defend"; *People* v. *Mullen,* 44 N.Y.2d 1, 6, 374 N.E.2d 369, 403 N.Y.S.2d 470 (1978); because he was represented by able counsel. No evidence was being taken nor were there witnesses whom the defendant should have had the opportunity to confront. The presence of counsel at this stage in the proceedings was sufficient, in the circumstances of this case, to afford the defendant due process and a fair trial under both the United States and Connecticut constitutions. See, e.g., *Harris* v. *United States,* 489 A.2d 464, 468 (D.C. App. 1985). "Due process of law requires that the pro-

---

[8] The defendant claims that the trial court erred in not considering other possible alternatives before finding that the defendant had waived his right to be present. We note that there was no request for any such alternatives. In any event, because we conclude that the trial court acted reasonably under the circumstances of this case and because no prejudice has been demonstrated because of its actions, we find no error under this claim.

ceedings shall be fair, but fairness is a relative, not an absolute concept. It is fairness with reference to particular conditions or particular results." *Snyder* v. *Massachusetts,* supra, 116. This language of Justice Cardozo underscores his thesis in *Snyder* that "[s]o far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id., 107–108. The circumstances of this case, including no demonstrable prejudice, require us to leave the judgment undisturbed.

There is no error.

In this opinion the other justices concurred.