STATE OF CONNECTICUT *v.* DOUGLAS W. BUSTER
(9957)

DUPONT, C. J., O'CONNELL and NORCOTT, Js.

Argued February 10—decision released April 7, 1992

*Michael A. Fitzpatrick,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's

attorney, and *John Smriga,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55a (a) and carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b). He was sentenced to a total effective term of twenty-five years incarceration.

On appeals, the defendant claims that the trial court (1) improperly admitted into evidence certain statements of a nonparty witness contained in the written statement of another witness, pursuant to *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), (2) abused its discretion in denying the defendant the opportunity to present certain surrebuttal evidence, and (3) improperly denied motions for judgment of acquittal because there was insufficient evidence to support the convictions. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The victim, Robert J. Cioppa, Jr., and a friend, Gary Lester, drove into the parking lot of a Bridgeport housing project at about 12:30 a.m. on March 4, 1989, seeking to buy crack cocaine. Cioppa and Lester had bought drugs there twice earlier in the evening of March 3, 1989. Upon driving into the lot, Cioppa was approached by a drug dealer named Sean, who had sold him narcotics earlier that night. The defendant then approached Cioppa's car window in an attempt to sell him drugs. When Cioppa indicated that he wanted to buy drugs from Sean instead, the defendant drew a gun.

Behind Sean and the defendant was Ronell Hanks, with whom Cioppa had attended high school. Cioppa

asked Hanks to intervene in order to prevent the defendant from doing anything with the gun. When the defendant threatened to shoot Hanks, Cioppa attempted to drive away. The defendant, however, fired at Cioppa, fatally wounding him. From the car's front passenger seat, Lester backed the vehicle into the street and steered it along the road until he could get behind the steering wheel and drive to Griffin Hospital in Derby, where Cioppa was pronounced dead.

At trial, the state presented evidence from several witnesses that it was the defendant who fatally shot Cioppa. Lester testified that although he did not see the defendant's face, the assailant was large and heavy-set. Lester testified that one shot was fired from a weapon with a large barrel between seven and eight inches long. Ala Carter, a resident of the housing project, testified that she saw a car enter the parking lot and heard its driver ask for drugs. She testified that the driver was not seeking out the defendant, who ran to the car, and that just prior to the shooting, she heard the defendant tell Hanks to "mind [his] business." Carter testified that the defendant shot the driver with a small gun after being rebuffed in his attempt to sell him drugs. She testified that she did not see anyone else there with a gun other than the defendant. Later, the defendant elicited testimony showing that Carter was not in the parking lot at the time of the shooting.

Jared Fleming also testified that he saw Cioppa's car enter the lot and heard the discussion between the defendant and Cioppa. He testified that both the defendant and Hanks had guns, and that he heard a gunshot but did not see who shot Cioppa. At this point, pursuant to State v. Whelan, supra, the court admitted into evidence, as a prior inconsistent statement, a written statement Fleming had given to the police subsequent to the shooting. In the statement, which mirrored Carter's testimony, Fleming said he heard the

defendant threaten to kill Cioppa and then watched as the defendant shot him. He did not tell the police, however, that Hanks had a gun.

Tremayne Newsome testified that he saw a car enter the lot and that a conversation that he could not hear ensued between Hanks, the driver and the defendant, who had a gun. Newsome testified that after going into his house, he heard a gunshot outside. At this point, pursuant to State v. Whelan, supra, the court admitted into evidence, as a prior inconsistent statement, a written statement Newsome had given to the police. The content of Newsome's statement mirrored Carter's testimony and the statement Fleming had given to the police. In his statement, Newsome said he was outside his house when he saw the defendant and Cioppa arguing about drugs. He said that after he went inside his house, he opened the door, looked out and saw the defendant draw a gun and shoot Cioppa. Hanks also testified that it was the defendant who shot Cioppa. Hanks testified that he had walked away from the defendant and Cioppa's car after the defendant pointed a gun at him and said he would shoot him.

In his case-in-chief, the defendant presented evidence to show that it was Hanks who shot Cioppa. Beverly Bass testified that she witnessed the incident from a window in the nearby apartment of a friend she was visiting that night. Bass testified that she saw a car drive into the lot and heard an argument about drugs and money. She testified that she heard shots and saw Hanks fire a gun. At the time of the shooting, Bass testified, the defendant was standing near a garbage dumpster, three to four feet from Cioppa's car. She testified that after the shooting, the defendant ran from the scene with a woman named Clara Cummings. Bass did not see a gun in the defendant's hand.

Cummings testified that she and the defendant were near the dumpster at about 11:30 p.m., when she saw Hanks, armed with a gun, approach a car that entered the lot. Cummings testified that she heard a shot while she was hiding behind the dumpster and that afterward she and the defendant fled. She testified that the defendant did not have a gun and that he was within her view when Cioppa was shot.

Another witness, Jermaine Kenney, testified that he was nearby on Trumbull Street talking with a young lady when he saw the defendant running from the parking lot while Hanks was firing a gun. Finally, the defendant elicited testimony from Kenneth Jones that three days after the defendant's arrest, he and Hanks drove to a wooded area off Alba Avenue, where Hanks retrieved a long barreled gun he then sold to Jones for $50. Jones' mother, Rita Holmes, then testified that she found a gun in her home and disposed of it in the household garbage. After the jury returned its verdict, the defendant filed motions for judgment of acquittal and for a new trial, which the court denied. This appeal followed.

I

The defendant first claims that the trial court improperly admitted into evidence certain remarks made by the defendant's cousin, Kenneth "Dimpy" Buster, which were contained in a written statement given to the police by Anthony Michael Brown. The defendant argues that admission of Kenneth Buster's remarks was improper for two reasons. First, they are not statements by Kenneth Buster, but merely Brown's unsupported opinions or assumptions. Second, the remarks fail to make relevant for rebuttal purposes certain statements made by the defendant in a written statement he gave the police subsequent to his arrest. We disagree.

The following additional facts are necessary to our resolution of this claim. After the defendant's arrest, he gave the police a written statement in which he claimed that the gun used to shoot Cioppa could be found in Hanks' house or in his car.[1] The statement was read to the jury during trial. After the defendant put on his case-in-chief, the state called Brown as a rebuttal witness. Brown, who did not see the shooting, stated that he knew the defendant and had grown up with him. Brown's written statement to the police contained the following:

"Q: Is the gun now or was it ever in your house?

"A: It [is] not in my house, the only time it was in my house was when Dimpy showed it to me, and he said he was going to bury it at Samuel Johnson school.

"Q: Why was Dimpy going to bury the gun?

"A: Because he didn't want [the police] to get it, it was the gun used to shoot the guy. . . .

"Q: Have you heard anything further about the gun since you saw it?

"A: Well, while Dimpy was at my house with it, after he had said he was going to bury it, he changed his mind and said he was going to put it in Ronell Hanks' car.

"Q: Why was Dimpy going to put the gun in Ronell's car?

"A: I guess so you all, could find it in there, so Ronell could be in . . . trouble."

At trial, Brown gave the following testimony. On the night Cioppa was shot, Brown was in his house when

---

[1] The pertinent portion of defendant's written statement is as follows:
"Q: Is there anything else that you want to add to this statement?
"A: Ronell has the gun that shot the man. It may be in his car, a 1977 Oldsmobile, black with a board in the back that is used as the bumper. The car is unregistered. If the gun is not in his car, it's in his house."

he heard gunshots outside. After refreshing his recollection by looking over his written statement, Brown recalled having told the police he had seen a "long grayish-colored .38" revolver in a bag at his home on the Sunday after the shooting. With him at his home that Sunday were his cousin, Jeh-U, and the defendant and his cousin, Kenneth Buster. Brown, however, then contradicted his written statement, testifying that it was "not valid." He testified that the police had forced him into making the statement, and that he was under the influence of narcotics at the time and was "trying to tell [the police] anything they wanted, to let [him] go." Moreover, Brown testified that he did not see the gun at his house, and the other three young men never were there. Brown also testified, however, that he was at home that Sunday with the three young men, and that they had had a conversation about the gun.

At this point, the state sought to introduce Brown's written statement for substantive purposes, pursuant to *State* v. *Whelan,* supra. With the jury out of the courtroom, the state also sought to introduce the remarks of Kenneth Buster, which were contained in Brown's written statement. Kenneth Buster's remarks were offered to show the defendant's state of mind and to explain his subsequent conduct in giving the police a written statement implicating Hanks. Over the defendant's objection, the court admitted Brown's written statement in its entirety, instructing the jury that Brown's remarks were coming in for the truth of what they assert, and that Kenneth Buster's remarks were being admitted only to show the defendant's state of mind and to explain his subsequent conduct. The defendant duly excepted to the court's ruling. Later, during its charge to the jury, the court again instructed the jury about Kenneth Buster's remarks.

## A

The defendant first claims that Kenneth Buster's remarks were improperly admitted because certain of Brown's responses to police inquiries do not constitute statements by Kenneth Buster and thus were only Brown's unsupported opinions or assumptions. Specifically, the defendant argues that the trial court should not have admitted Brown's responses to the questions, "Why was Dimpy going to bury the gun?" and "Why was Dimpy going to put the gun in Ronell's car?" We disagree.

As a threshold matter, we must identify the appropriate standard under which we review these claims. First, we note that a court has broad discretion in ruling on the admissibility of evidence. *State* v. *Negron,* 221 Conn. 315, 328, 603 A.2d 1138 (1992). In addressing a challenge to a trial court's evidentiary rulings, we note that great deference ordinarily is accorded such rulings, and that they will be disturbed on appeal only upon a clear showing of abuse of discretion. *Ellice* v. *INA Life Ins. Co. of New York,* 208 Conn. 218, 222, 544 A.2d 623 (1988); *State* v. *Estrada,* 26 Conn. App. 641, 652, 603 A.2d 1179 (1992).

The defendant, in essence, now claims for the first time on appeal that Kenneth Buster's remarks amounted to improper opinion testimony from a lay witness who lacked personal knowledge of the content of those remarks. We note that by objecting to the admission of the remarks on a variety of other grounds,[2] the defendant failed to preserve properly the issue he has raised on appeal. Practice Book § 4185[3] requires that

[2] At trial, the defendant objected to the admission of Kenneth Buster's remarks on grounds of relevancy and hearsay, and on grounds that they are not relevant rebuttal evidence.

[3] Practice Book § 4185 provides in pertinent part: "The [appellate] court shall not be bound to consider a claim unless it was distinctly raised at the

appealable claims of error be distinctly raised at trial. See also Practice Book § 288; *State* v. *Forrest,* 216 Conn. 139, 146, 578 A.2d 1066 (1990). Nevertheless, because both parties have briefed the issue; *State* v. *Pollitt,* 205 Conn. 61, 86, 530 A.2d 155 (1987); and the record in this case provides an adequate basis for appellate review, we exercise our discretion and review the defendant's claim. *State* v. *Forrest,* supra; *State* v. *Pollitt,* supra.

The state offered Kenneth Buster's remarks to rebut evidence the defendant had offered to show that Hanks had shot Cioppa. The court properly admitted the remarks for the specific, limited and narrow purpose of showing the defendant's state of mind at the time they were made and to explain his subsequent conduct. Even if we were to agree that the remarks were not those of Kenneth Buster but opinion testimony by Brown, this would not warrant reversal of the defendant's convictions.

The admission of prior written statements for substantive purposes is governed by *State* v. *Whelan,* supra, 753. See also *State* v. *Grant,* 221 Conn. 93, 98–99, 602 A.2d 581 (1992). In *Whelan,* our Supreme Court held that a written statement is admissible for substantive purposes where the declarant (1) signs the statement, (2) has personal knowledge of the facts stated, and (3) testifies at trial and is subject to cross-examination. *State* v. *Grant,* supra, 99; *State* v. *Whelan,* supra; *State* v. *Estrada,* supra, 656–57.

By asserting that the statements attributed to Kenneth Buster were only Brown's opinions or assumptions, the declarant essentially mounts a challenge to the court's ruling based on the second prong of *Whe-*

trial or arose subsequent to the trial. The [appellate] court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

*lan.* This argument, however, has little merit. In *State* v. *Green,* 16 Conn. App. 390, 399, 547 A.2d 916, cert. denied, 210 Conn. 802, 553 A.2d 616 (1988), this court construed *Whelan,* and held that "for a prior inconsistent statement containing statements of a third party to be admissible as substantive evidence the declarant must have personal knowledge of the facts underlying the statement and not just personal knowledge that the statement was made." In *State* v. *Grant,* supra, however, our Supreme Court rejected this aspect of *Green,* holding that "the 'personal knowledge' prong of the *Whelan* rule does not require that the declarant have witnessed the commission of the crime that is the subject of the prior inconsistent written or recorded statement." *State* v. *Grant,* supra, 99.

Applying the principles of *Grant* to this case, we conclude that even if the statements at issue were Brown's and not Kenneth Buster's, Brown need not have had personal knowledge of their underlying facts. Brown need not have witnessed the shooting of Cioppa, and he need not have had personal knowledge that Kenneth Buster intended to implicate Hanks by putting the gun in his car. Further, because Brown signed the statement he gave to the police and was cross-examined at trial, his statement was properly admitted as a prior inconsistent statement under the three-pronged *Whelan* test. *State* v. *Grant,* supra; *State* v. *Whelan,* supra. Finally, the remarks at issue were not offered for the truth of what they assert, but to show the state of mind of the defendant at the time and to explain his subsequent conduct. As such, they were not hearsay and were properly admitted. The court clearly instructed the jury as to the purposes for which the remarks were admitted not once, but twice. Under these circumstances, we find no manifest injustice affecting the fairness or integrity of the defendant's trial.

## B

The defendant next claims that Kenneth Buster's remarks should not have been admitted because they failed to make relevant for rebuttal purposes the defendant's written statement to the police that the gun was in Hanks' car or in his house.[4] We disagree.

Although we already have determined that Kenneth Buster's remarks were properly admitted to show the defendant's state of mind and to explain his subsequent conduct, our Supreme Court has stated that it is improper to admit such evidence when it does not tend to establish a fact in issue or corroborate other direct evidence in the case. *State* v. *Robinson,* 213 Conn. 243, 259, 567 A.2d 1173 (1989). Therefore, we must determine if the defendant's state of mind or subsequent conduct was indeed relevant.

In his case-in-chief, the defendant sought to create a reasonable doubt as to his guilt by presenting evidence from several witnesses that Hanks shot Cioppa. On rebuttal, the state sought to counteract the defendant's strategy by offering Kenneth Buster's remarks at the Sunday gathering at Brown's home to show their effect on the defendant and to explain why the defendant would later tell the police that Hanks had the gun. Kenneth Buster's remarks thus tend to establish that the defendant may have been involved in an effort to blame Hanks for the shooting. This in turn could permit the jury reasonably to infer that the defendant was acting in accord with this effort when he later told the police that Hanks had the gun. We therefore conclude that the defendant's state of mind was relevant, and that Kenneth Buster's remarks did make relevant for rebuttal purposes the written statement the defendant later

---

[4] This claim was properly preserved at trial. See footnote 3, supra.

gave to the police. Finally, we note that no prejudice inured to the defendant as a result of the court's ruling because, as we have stated, the court twice instructed the jury that the remarks were admitted only for a specific and limited purpose. In the absence of evidence to the contrary, jurors are presumed to follow the court's instructions. *State* v. *Negron,* supra, 331; *State* v. *Jupin,* 26 Conn. App. 331, 350, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992).

## II

The defendant next claims that the trial court improperly denied him the opportunity to present certain sur-rebuttal evidence to counter Brown's testimony and the remarks by Kenneth Buster. Again, we disagree.

Subsequent to Brown's testimony, the defendant sought to present testimony from Kenneth Buster to refute the claim that the conversation at Brown's house had occurred, and to show that Brown never had the gun in his possession and that there was no plan to make Hanks appear to be the perpetrator of the shooting. The court denied the defendant's request for two reasons. First, the state's rebuttal evidence was relevant only to the defendant's state of mind and not to whether he had taken certain actions. Second, in light of the limited purpose for which Kenneth Buster's remarks had been admitted, further testimony from him would only be cumulative. The court stated that if it permitted him to testify, further surrebuttal would be requested and there would be no finality to the trial.

It is well established that trial courts are vested with considerable discretion in the matter of rebuttal evidence. *State* v. *Wood,* 208 Conn. 125, 139, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *State* v. *Simino,* 200 Conn. 113, 123, 509 A.2d 1039 (1986). "Ideally, rebuttal evidence is that which refutes the evidence [already] presented

. . . rather than that which merely bolsters one's case." (Internal quotation marks omitted.) *State* v. *Wood*, supra. There is no constitutional right to present surrebuttal evidence. *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 555, 600 A.2d 757 (1991).

Because Brown already had testified that the conversation in question had not occurred, the court reasonably could have determined that surrebuttal evidence on this very point from Kenneth Buster would merely bolster the defendant's case rather than refute evidence already presented. Further, the court reasonably could have determined that even if Kenneth Buster were to testify that no conversation occurred at Brown's house, such evidence would not necessarily refute the implications of the defendant's subsequent conduct in telling the police that Hanks had the gun. In other words, the jury would still be able reasonably and logically to infer that the defendant was seeking to cast blame on Hanks. Therefore, the court reasonably could have concluded that the proposed testimony from Kenneth Buster would be cumulative in nature and designed primarily to bolster the defendant's case rather than to refute further Brown's testimony. See *State* v. *Wood*, supra; *State* v. *Watley*, 195 Conn. 485, 490, 488 A.2d 1245 (1985). "In a criminal trial, the judge is more than a mere moderator of the proceedings." (Internal quotation marks omitted.) *State* v. *Fernandez*, 198 Conn. 1, 10, 501 A.2d 1195 (1985). "[The judge] . . . is a minister of justice and may, of course, take all steps reasonably necessary for the orderly progress of the trial." *State* v. *Woolcock*, 201 Conn. 605, 622, 518 A.2d 1377 (1986); *State* v. *Jupin*, supra, 349. Therefore, it is entirely proper for a court to deny a request to present certain testimony that will further "nothing more than a fishing expedition"; (internal quo-

tation marks omitted); *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 249, 520 A.2d 1008 (1987); or result in a "wild goose chase." (Internal quotation marks omitted.) *State* v. *Johnson,* 190 Conn. 541, 551, 461 A.2d 981 (1983). We conclude that the court's refusal to permit the defendant to present surrebuttal evidence from Kenneth Buster was a reasonable exercise of its sound discretion. *State* v. *Wood,* supra; *State* v. *Simino,* supra.

## III

The defendant next challenges the sufficiency of the evidence regarding his convictions for manslaughter in the first degree and carrying a pistol without a permit. This need not detain us long. Because the defendant's brief on appeal contains no more than the bare assertion that insufficient evidence existed to support his conviction for carrying a pistol without a permit, we deem this part of his claim abandoned. See Practice Book § 4065; *State* v. *Tatum,* 219 Conn. 721, 742, 595 A.2d 322 (1991); *State* v. *Nita,* 27 Conn. App. 103, 112–13 n.6, 604 A.2d 1322 (1992).

With respect to his manslaughter conviction, the defendant argues that the testimony of Lester, Carter, Fleming, Newsome and Brown is neither substantial nor so convincing that it could be said to establish beyond a reasonable doubt that he is guilty of fatally shooting Cioppa. We disagree.

The two part test for appellate analysis of a claim of evidentiary insufficiency is well established. First, we review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. Second, we determine whether on the facts so construed and the inferences reasonably drawn therefrom, the jury could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605,

609, 595 A.2d 306 (1991); *State* v. *Montanez,* 219 Conn. 16, 19, 592 A.2d 149 (1991); *State* v. *Jupin,* supra, 337. In reaching its conclusions, a jury may draw reasonable and logical inferences from the facts proven, but it may not resort to speculation and conjecture. *State* v. *King,* 216 Conn. 585, 602, 583 A.2d 896 (1990); *State* v. *Jupin,* supra. With respect to the type of evidence the jury employs to reach its verdict, it is immaterial to the probative force of that evidence that it be, in whole or in part, circumstantial rather than direct. *State* v. *Henning,* 220 Conn. 417, 420, 599 A.2d 1065 (1991); *State* v. *Jupin,* supra. We emphasize that it is not any single fact but the cumulative impact of a multitude of facts that establishes guilt when proof is based substantially on circumstantial evidence. *State* v. *Henning,* supra; *State* v. *Jupin,* supra. Each essential element of the crime must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *King,* supra, 601; *State* v. *Jupin,* supra.

Finally, in determining whether the jury reasonably could have found guilt, we ask if any rational factfinder could have done so. *State* v. *Montanez,* supra, 20; *State* v. *King,* supra, 601; *State* v. *Jupin,* supra, 338. It is not our province as a reviewing court to sit as "a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Henning,* supra, quoting *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. Id. This court has had neither the opportunity to observe the witnesses, nor the chance to evaluate their credibility, tasks that are exclusively within

the province of the jury as trier of fact. *State* v. *Carter*, 196 Conn. 36, 46, 490 A.2d 1000 (1985); *State* v. *Jupin*, supra, 339.

At trial, the state presented ample evidence, both testimonial and written, direct and circumstantial, from which the jury could find the defendant guilty beyond a reasonable doubt. Lester, Carter, Fleming, Newsome and Brown testified that it was the defendant who burst upon the scene and fatally wounded Cioppa when a drug deal went sour. Although the state conceded at oral argument that discrepancies exist in the stories of each of its witnesses, we reiterate that we do not sit as a thirteenth juror; *State* v. *Henning,* supra; to second-guess the trier of fact's evaluations of witness credibility. Viewing the evidence in the light most favorable to sustaining the jury's verdict, as we must, we conclude after scrupulous review of the record that the jury reasonably and logically could have determined that the evidence was sufficient to establish beyond a reasonable doubt that the defendant committed the crime of manslaughter in the first degree.

The judgment is affirmed.

In this opinion the other judges concurred.