NAPIER TALTON *v.* WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued March 4—decision released August 10, 1976

*John R. Williams,* for the appellant (plaintiff).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (defendant).

LOISELLE, J. The plaintiff, Napier Talton, filed a petition for a writ of habeas corpus claiming that he was confined in the Connecticut correctional institution at Somers without law or right because, among other reasons, he was denied due process at his trial when, at a critical point, the court proceeded with the trial in his absence. The plaintiff has appealed from the judgment denying the petition.

The court found that, after a trial to the court, the plaintiff was convicted of manslaughter in the first degree and that he was sentenced to a term in the state correctional institution. During the trial proceedings, the state's attorney offered as evidence a written statement, signed by the plaintiff, in which the plaintiff confessed to killing Marsha Layne. The statement was a transcription of a tape recording of a New Haven police detective's interrogation of the plaintiff. The plaintiff's trial coun-

sel said he would not object to the introduction into evidence of the signed, written statement if he had an opportunity to hear the tape recording. The court recessed and reconvened in chambers where the tapes were played in the presence of the judge, the clerk of the court, the state's attorney, the plaintiff's counsel, two New Haven police detectives and the court reporter.

After the tapes had been played and after the written statement had been checked for its conformity with the tapes, court was reconvened in the courtroom, where the state's attorney moved that the tapes be introduced as full exhibits and that the tapes be played again in the courtroom. The plaintiff's counsel then told the court that the written statement was a satisfactory transcription of the tape recording, but that he would object to introducing and playing the tapes at that point because the tapes had been played once and playing them again would serve no purpose. The plaintiff's counsel also said that he had asked the plaintiff if the plaintiff wanted to be in chambers to hear the tapes, and the plaintiff indicated that he did not.[1] Subsequently, the tapes were received into evidence without objection, but they were not played in the courtroom.

The trial court did not, at any time, ask the plaintiff about his absence from chambers or ask

[1] The defense counsel's response to the state's motion was: "I would object to the introduction of the tapes and to playing them again, your Honor, for this reason. Your Honor and I both have heard the entire playing of the tapes. It has consumed some twenty-five minutes, I suspect, or perhaps more, and I would have to concede that the tape and the statement are so close that they are basically the same item. There may be a few expletives or pauses that were missed, but to the best of a human's ability, I would have to concede that one follows the other. I don't think they have to be played again for your Honor's benefit because your Honor sat and followed

the plaintiff whether he wished to be present at the proceedings conducted there. The plaintiff did not personally make any statement on the record regarding his absence from chambers while the tapes were being played.[2]

The plaintiff now asserts that the proceedings in chambers were a critical part of the trial and that his absence during those proceedings constituted a denial of due process. The state counters with the assertions that, firstly, hearing the tapes in chambers did not constitute a critical stage of the proceedings against the plaintiff, and, secondly, even if it were a critical stage, the plaintiff effectively waived any right he might have had to be present, and, thirdly, even if a right was denied that was not waived, such denial was harmless beyond a reasonable doubt.

The fourteenth amendment guarantees the accused's right to be present during a state trial. *Illinois* v. *Allen,* 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353, rehearing denied, 398 U.S. 915, 90 S. Ct. 1684, 26 L. Ed. 2d 80; *Snyder* v. *Massachusetts,* 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674. The basis and extent of the right, however, are the subject of some confusion. See annot., 25 L. Ed. 2d 931,

word for word the entire statement in chambers. I have an additional reason. When we recessed to hear these tapes in chambers, I asked the defendant if he wanted to be present for that session and he indicated to me no, he was upset, tired and he would rather not. Your Honor will note that my defense in this case is an insanity defense . . . indicating a charged-up emotional situation and the defendant has some deep emotional problems. Playing them in the courtroom again would serve no purpose. Your Honor is the judge of the facts and law here. You have heard them once and I don't believe that playing them again would serve any purpose."

[2] The plaintiff has made assignments of error to correct the finding. They have not been considered because their resolution would have no bearing on the outcome of the appeal.

935–37. In *Snyder* v. *Massachusetts*, supra, the court, in the opinion of the majority of five, said (pp. 105-106): "[I]n a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." The majority opinion went on to point out that the amendment does not assure the right of presence "when presence would be useless, or the benefit but a shadow"; rather, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id., 106–108. Justice Cardozo, writing for the majority, also distinguished the right of presence from the right of confrontation, the latter being limited to the stages of the trial when there are witnesses to be questioned. Id., 107, 114–15.[3] The dissent in *Snyder,* however, found that the sixth amendment guarantees the accused the right of presence at every stage of his trial. Id., 130–32. This formulation of the rule was expressed in dictum in *Diaz* v. *United States,* 223 U.S. 442, 454, 32 S. Ct. 250, 56 L. Ed. 500, and finds more recent expression and approval in *Illinois* v. *Allen,* supra, 338. This most recent statement came after the application of the sixth amendment to the states through the fourteenth amendment in *Pointer* v. *Texas,* 380 U.S. 400, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923.

---

[3] The majority opinion apparently found the source of the right of presence to be in the common law. *Snyder* v. *Massachusetts,* 291 U.S. 97, 107, 54 S. Ct. 330, 78 L. Ed. 674. Although there are no cases dealing with other stages of the trial, the right of an accused to be present at the rendition of the verdict was recognized early in this state. *State* v. *Hurlbut,* 1 Root 90.

The problem, then, is not so much defining the authority for the right as it is establishing to what extent the right of presence attaches when witnesses are not being questioned. The majority in *Snyder* analyzed the proceedings to find those critical points in the proceedings at which the accused's presence was required to give a full opportunity to defend. The rule suggested by *Illinois* v. *Allen,* supra, is that the right attaches at "every stage of his trial." From the cases, however, it is clear that not everything associated with the trial of criminal actions is a part of a trial in the constitutional context. See cases in annot., 25 L. Ed. 2d 931, and annot., 100 A.L.R. 478; 21 Am. Jur. 2d, Criminal Law, §§ 288–308. In the present case, whether the test of either *Snyder* v. *Massachusetts,* supra, or *Illinois* v. *Allen,* supra, is chosen, the result is the same. The court's taking of evidence in chambers was a part of the trial, and the plaintiff's presence in chambers would have had a reasonably substantial relation to his opportunity to defend.

The proceedings in chambers were convened to verify the accuracy of a written statement, and the trial judge heard the tape recording for the first time. The purpose of the proceeding was to test the admissibility of one piece of evidence by the introduction of another piece of evidence. At the introduction of the tapes, the plaintiff would have had an opportunity to assist his counsel by explaining the features of the tape recording. He would have had the opportunity to advise his counsel on the accuracy of the tapes and on any defects in the reproduction on the tapes. In the present case, the plaintiff had a right to be present at the evidentiary hearing in chambers.

The court concluded that if the plaintiff had had a right to be present at the proceedings conducted in chambers, he effectively waived that right. The accused's right to be present at trial may be lost by consent, or waiver, or by misconduct. *Taylor* v. *United States,* 414 U.S. 17, 94 S. Ct. 194, 38 L. Ed. 2d 174; *Illinois* v. *Allen,* 397 U.S. 337, 342-43, 90 S. Ct. 1057, 25 L. Ed. 2d 353; *Snyder* v. *Massachusetts,* supra, 106; *United States* v. *Crutcher,* 405 F.2d 239, 243 (2d Cir.), cert. denied, 394 U.S. 908, 89 S. Ct. 1018, 22 L. Ed. 2d 219. The plaintiff, relying on *Cross* v. *United States,* 325 F.2d 629, 631 (D.C. Cir.), claims that, to waive the right to be present, the accused must be brought personally before the court, advised of the right to be present, and then permitted to make an intelligent and competent waiver. This procedure, however, is not required.

In *Taylor* v. *United States,* 478 F.2d 689 (1st Cir.), affirmed, 414 U.S. 17, 94 S. Ct. 194, 38 L. Ed. 2d 174, the court held that the accused's voluntary absence was an effective waiver of the right to be present. There the accused was free on bail during trial. The court specifically rejected the procedure for waiver required in *Cross.* To the claim that the accused must be told of his rights and the consequences of a waiver before a waiver could be found, as in *Brady* v. *United States,* 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747, and *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, the court said (p. 692): "[T]hose cases extended the constitutional umbrella so broadly because of other underlying problems. In *Miranda* the court was concerned with the problems of direct coercion, the charged emotional atmosphere in many in-custody interrogations and the

understandable fear held by an accused that he had better cooperate with the police if he hopes for any leniency later. In *Brady* the court recognized that a multitude of extraneous factors, some of which might include improper prosecutorial activity, have frequently induced a decision to plead guilty. Thus, in both instances it was thought that the constitutional rights at stake could be meaningfully exercised only if the consequences of waiver were expressly told to the accused. These or similar underlying fears are simply absent in our case." It concluded that the constitutional right to be present during the trial was one which could be effectively waived by voluntary absence. Although *Taylor* dealt with a situation where the accused was free on bail, and *Cross* dealt with a situation where the accused was in custody, as in the present case, the rationale of *Taylor* would support a finding of waiver, short of the procedure in *Cross,* in cases, such as the present, where the accused is in custody and where he is temporarily absent during the trial. In the present case, there is no assertion of coercion, no suggestion that the plaintiff would get better treatment if he absented himself from chambers, and no claim that he did not have the assistance of counsel to make intelligent trial decisions. Further, there is no indication that there was a communication problem between counsel and the plaintiff. In the final analysis, whether there has been an intelligent and competent waiver of the right to presence "must depend, in each case, upon the particular facts and circumstances surrounding that case." *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461.

Waiver is the intentional relinquishment of a known right. "Waiver does not have to be express,

but 'may consist of acts or conduct from which waiver may be implied.' " *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 562, 316 A.2d 394. The plaintiff was specifically asked whether he wanted to be present in chambers when the tapes were played. Although the defense counsel's inquiry was not framed in terms of a constitutional right, it still contained the essence of the right: he had the opportunity to attend. The plaintiff never personally stated his answer for the record, but his counsel gave the purported answer in his presence. It is clear that the plaintiff should have known what was going to happen in chambers. Counsel's statement also indicates that, knowing he could attend, the plaintiff intentionally chose not to. The findings of the court support its conclusion that there was a waiver of the right to be present.[4]

There is no error.

In this opinion the other judges concurred.

---

[4] We also note that although the state's attorney moved that the tapes be played again, they were not played because the defense counsel objected. The defense voluntarily relinquished the opportunity to test the evidence in the plaintiff's presence. As stated in *Estelle* v. *Williams*, 425 U.S. 501, 512, 96 S. Ct. 1691, 48 L. Ed. 2d 126: "Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system."