******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MARCELLO
ANTHONY EDWARDS
(AC 35986)

Sheldon, Prescott and Flynn, Js.

*Argued January 7—officially released June 23, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Dewey, J.)

*Owen Firestone*, certified legal intern, and *Alice Osedach*, senior assistant public defender, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Thomas R. Garcia*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Marcello Anthony Edwards, appeals from the judgment of conviction, rendered against him after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and the revocation of his probation for having violated General Statutes § 53a-32. On appeal, the defendant claims that his conviction should be reversed and that this case should be remanded for a new trial on grounds that the trial court violated his due process right to a fair trial by (1) failing to inquire, sua sponte, as to his continuing competency to stand trial despite his irrational behavior following an earlier determination of his competency; and (2) conducting critical stages of the proceedings against him in his absence, without either advising him of his right to attend such proceedings or canvassing him as to whether he wanted to waive that right. We reject both claims and, accordingly, affirm the judgment of the court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the appeal. The victim, Vanessa Lindo, met the defendant when she was fifteen and he was twenty or twenty-one years old. They began dating at that time and eventually had two children together, Joshua and Sada. The defendant physically abused the victim during their relationship. On one occasion, the defendant attacked the victim while she was at work, forcing her to lock herself in the office of a coworker to escape physical harm. On another occasion, when the defendant and the victim argued, he punched her in the head, splitting her lip and rupturing her eardrum. In August, 2009, the relationship ended, and the defendant moved out of the victim's home.

On November 16, 2011, the defendant took Sada to McDonald's after school and later brought her back to his mother's house, where he then lived. Shortly thereafter, the victim arrived to pick up Sada and take her home. Upon returning home, the victim called Joshua, who was home alone, and asked him to unlock the door to let them in the house. As the victim approached the house, however, the defendant accosted her and stabbed her repeatedly in the head, chest, arm, and thigh. When the victim cried out for help, the defendant fled. Joshua ran to the entry of the house, where he saw the victim, lying on the ground, bleeding. He dragged his mother into the house and called 911. After the victim was taken to a hospital, Joshua texted the defendant, "You're not gonna get away with it. You're going to jail." The defendant responded by text, "Fuck you."

Thereafter, the defendant was arrested and charged with assault in the first degree and violation of probation. The defendant pleaded not guilty to both charges

and elected a jury trial on the assault charge. On May 30, 2012, the date on which the defendant's jury selection was scheduled to begin, the court, *Randolph, J.*, ordered that the defendant undergo a competency evaluation pursuant to General Statutes § 54-56d.[1] Under the court's order, the defendant was evaluated by a clinical team at the MacDougall-Walker Correctional Institution, which prepared and submitted a report stating its findings. At a subsequent hearing on the defendant's competency, held on August 1, 2012, the court, *Vitale, J.*, heard testimony from Jane St. Laurent, a member of the clinical team, who summarized the report as follows. The defendant was "unable to discuss [his] case in a rational manner." Whereas a typical interview lasts for at least one hour to one and one-half hours, and includes a discussion of the examinee's background, a mental status examination and a review of the pending criminal charges, the defendant "talked over" the evaluators, could not be interrupted, and walked out of the interview after approximately twenty minutes.[2] On the basis of its observations, the team determined that the defendant did "not have the ability to develop a productive or collaborative relationship with an attorney." The team thus concluded that the defendant was "not able to understand the proceedings against him and . . . not able to assist in his defense." The team further concluded, however, that there was a substantial probability that the defendant could be restored to competency with psychiatric evaluation and treatment. It therefore recommended that he be committed for that purpose for a period of sixty days.

The court adopted the team's findings by a preponderance of the evidence, and thus found the defendant incompetent to stand trial. Consistent with the team's recommendations, the court ordered the defendant to participate in an inpatient treatment program at the Whiting Forensic Division of the Connecticut Valley Hospital (Whiting), and continued his case for sixty days for further proceedings with respect to his competency.

On September 26, 2012, after the sixty day period had ended, the court, *Dewey, J.*, convened a hearing for the purpose of reassessing the defendant's competency. At the commencement of the hearing, the court noted that it had received a new competency evaluation report, dated September 18, 2012, which had been authored by Harry Hernandez, a competency monitor at Whiting who had served as a member of the clinical team that had evaluated the defendant.

Hernandez testified at the hearing in a manner consistent with his report. He stated that the defendant initially was cooperative during treatment and was described by his attending physicians as "calm . . . and articulate with no sign of major mood disorder or psychotic disorder." Accordingly, the defendant's

attending psychiatrist did not make any specific diagnosis of him, and no medications were administered to him during his hospitalization. Hernandez further reported, however, that the defendant later "exhibited a significant change in his motivation to attain competency. At the beginning of his hospital stay, he demonstrated factual knowledge of the judicial processes, including roles and functions of court personnel and court proceedings, as well as the importance of working with his attorney. After several weeks his motivation decreased and he began claiming that he was not competent as he did not know roles of courtroom personnel or court proceedings. The treatment team assessed this as not credible and inconsistent with the way in which one's memory functions and as a sign of his poor motivation to obtain competence." The team thus unanimously concluded that the defendant had the capacity to assist in his defense and was competent to stand trial.

The defendant shouted out during Hernandez' testimony, stating, "[Y]ou're lying, okay, I can't work with no attorney, you know that, okay. I can't work with no attorney, okay." The defendant, after being warned by the court that his behavior would necessitate his removal, continued to interject. As a result, he was removed from the courtroom for the remainder of the competency hearing.[3]

The court ultimately found that the defendant was competent to stand trial. It found no evidence that the defendant could not work with an attorney or understand the proceedings against him. On the contrary, it found that the defendant "can do it when he chooses to . . . it's a matter of choice, not of ability."

Jury selection began on November 13, 2012. At the outset, the defendant questioned the court's authority to preside over his case.[4] The defendant also refused to change out of his prison clothes, even though he had been informed by the court that prospective jurors would see him wearing them. The court then inquired of defense counsel whether he had observed any change in the defendant's mental condition since the court had found him competent. Defense counsel responded that the defendant's condition and demeanor were unchanged since that time.

During voir dire, the defendant attempted repeatedly to discuss the merits of his case with venirepersons. At one point, he read aloud to a potential juror from the police report. The court cautioned the defendant that his outbursts would force it to remove him from the courtroom. The defendant responded, "[W]ell, ya'll can't go forward without me, so what we going to do?" The defendant continued to behave in a disruptive manner, as a result of which the court once again ordered that he be removed from the courtroom.[5] The defendant was then placed in a room adjacent to the courtroom where he could both observe and hear the proceedings.

Later, however, when the defendant screamed and banged on the walls of the adjacent room, the marshals were required to leave the courtroom to attend to him. The marshals reported to the court that the defendant wanted to go downstairs, and that he would continue banging on the walls until he was permitted to do so. The court thereupon ordered that the defendant be brought downstairs.

After a recess, defense counsel told the court that the defendant wanted to be brought upstairs so that he could address the court. The defendant was brought upstairs to the courtroom, where he told the court that he was supposed to question prospective jurors with his attorney serving as standby counsel. The court stated that it would not allow the defendant to proceed pro se in light of his behavior. The defendant responded by insisting that he be allowed to choose his own jury, stating, "Listen, we going to have problems until I get what I need, okay?"[6] The court then attempted to continue with voir dire, but the defendant threatened to question the next juror. The defendant persisted in his efforts to question prospective jurors and talked over the court when it ordered him not to interrupt, causing the court to order that he be removed from the courtroom once again.[7]

On December 10, 2012, the first day of evidence at trial, the defendant refused to leave the lockup. Defense counsel attributed his client's refusal to his "[s]tubbornness" and the court concurred, noting without objection that his conduct did not raise a "competency issue . . . ." The court further stated that, on the previous court date, the defendant's behavior had been violent and that physical restraints had been required. Accordingly, in lieu of forcing the defendant to come up to the courtroom, the court told the marshals to communicate to him that he would be "more than welcome" to attend the proceedings, if he chose to do so. The defendant, however, remained in the lockup.

When the defendant finally returned to the courtroom just prior to closing arguments, he stated for the record that his absence from the proceedings constituted a sixth amendment violation. The defendant acknowledged that his absence had been voluntary, stating that he was unwilling to proceed without a document from the governor confirming the court's authority to proceed. The defendant then left the courtroom once again, stating, "Okay, well . . . y'all do your little hangin' by yourselves. I'm going back downstairs."

In its final jury charge, the court instructed the jury not to draw any adverse inference from the defendant's absence from the courtroom during trial.[8] The jury thereafter found the defendant guilty of one count of assault in the first degree. On the basis of the conviction of first degree assault, the court found that the defendant had violated his probation.[9]

During the defendant's sentencing, defense counsel noted for the record that he had been unable to communicate with the defendant "in terms of going over the accurateness of the [presentence investigation report]." The defendant interrupted his attorney as he spoke, stating, "He can't make no efforts because he don't represent me, so what kind of efforts he make?" The court told the marshals to place the defendant in the adjacent room. In the defendant's absence, members of his family spoke on his behalf and requested leniency. The defendant's sister told the court: "[T]he person you saw here and dealt with is not the person I know." The defendant's brother described him as "[a] very ambitious guy" and a hard worker. Referring to the defendant's absence during the trial, he stated that "[the defendant] just felt that the system has been treating him unfairly, and my understanding is that he did not come to the trial because he thought that the system was so much against him—everything that he does."

Defense counsel then had the following exchange with the court:

"[Defense Counsel]: From what little communication and contact I've had with [the defendant], what I can sense is his frustration with the system. I don't know if it's delusional, I don't know if he has a basis for it, but I don't think—

"The Court: Refusal to accept the court's jurisdiction is not an issue of competency, it's just flat out refusal.

"[Defense Counsel]: That's correct. And . . . I see it every day with not [the defendant] but other clients of mine, where they feel as though they've been tangled in the system, and I think that's really the root—whether it's based on fact or whether it's his own opinion, that's what he believes. But again . . . as the court could see from his family members . . . the [defendant] that we saw and was portrayed during the course of the trial is completely different from how his family . . . perceive him to be."

The court then ordered that the defendant be brought back into the courtroom so that he could make a statement.[10] The defendant was removed shortly thereafter, however, when he repeatedly yelled and interrupted the court as it attempted to impose his sentence.[11]

On the charge of assault in the first degree, the court sentenced the defendant to a term of twenty years of incarceration, of which five years was a mandatory minimum sentence that could not be suspended or reduced. On the charge of violation of probation, the court sentenced the defendant to a term of thirty-seven months incarceration, to be served consecutively to his sentence for first degree assault. The defendant appeals from the judgment of conviction.

I

The defendant first claims that the court violated his due process right to a fair trial by failing to inquire further as to his competency to stand trial when evidence suggesting the need for such an inquiry came to its attention during trial. More specifically, the defendant argues that his behavior at trial, viewed in light of the pretrial court's earlier finding that he was incompetent, required the court to order sua sponte that his competency be reevaluated pursuant to § 54-56d.

The defendant did not raise this claim at trial. Accordingly, he asks this court to review it on appeal pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[12] Because the record is adequate to permit such review and the claim is of constitutional magnitude, we will review the defendant's claim.

At the outset, we set forth the applicable legal principles that guide our resolution of the issue. The "conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. Conn. Const., art. I, § 8; U.S. Const., amend. XIV, § 1 . . . . [T]his constitutional mandate is codified in . . . § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent. . . .

"A defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense. . . . This statutory definition mirrors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). According to *Dusky*, the test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him. . . . Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 20–21, 751 A.2d 298 (2000).

"Section 54-56d establishes the procedural requirements for competency determinations. A court may undertake a competency examination upon a motion by the defendant or the state and in some circumstances must evaluate the defendant's competency sua sponte." Id., 22. "[A] trial court must order a competency hearing at any time that facts arise to raise a reasonable doubt about the defendant's competency to continue with the trial." *State* v. *DesLaurier*, 230 Conn. 572, 589 n.12, 646 A.2d 108 (1994).

"[T]he rule of *Pate* v. *Robinson*, [383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)] imposes a constitutional

obligation, under the due process clause, to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial . . . . When a *Pate* inquiry is required, a court may not rely on the defendant's subjective appraisal of his own capacity or on the court's personal observations of the defendant but must hold an evidentiary hearing into the defendant's competence. . . . Competence to stand trial is a legal question, which must ultimately be determined by the trial court. . . . The decision to grant [an evidentiary] hearing [into a defendant's competence] requires the exercise of sound judicial discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Cuesta*, 68 Conn. App. 470, 481–82, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002).

The defendant claims that the court violated his due process right to a fair trial by failing to monitor and inquire into his competency to stand trial, which he claims to have been warranted by the prior determination that he was incompetent and what he claims to have been "regular reminders" of his underlying mental issues as trial proceeded. The state disagrees, contending that the court *did* inquire into the defendant's competency by confirming with defense counsel that the defendant's demeanor and condition had remained unchanged since the time of the final pretrial evaluation of his competency. The state thus contends that the court justifiably determined that the defendant's conduct resulted not from mental incompetency, but from his deliberate choice to obstruct the proceedings. On that basis, it argues, the court reasonably concluded that the defendant's behavior did not raise a reasonable doubt as to his continuing competency. We agree with the state.

We review the court's determination of the defendant's competency under the abuse of discretion standard.[13] As this court has stated, "[t]he trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." *State* v. *Murray*, 28 Conn. App. 548, 553–54, 611 A.2d 916 (1992), appeal dismissed, 225 Conn. 524, 624 A.2d 377 (1993).

In the present case, the record clearly shows that the court continuously observed the defendant, repeatedly inquired about and commented as to his competency, and consistently concluded, on the basis of its firsthand observations of the defendant's demeanor, that his conduct, although disruptive and obstreperous, did not suggest incompetence. When a court has previously found a defendant competent and that determination is premised on proper consideration of the relevant factors, "the court's inquiry when deciding whether to order

another competency evaluation is whether the defendant's condition has materially changed since [the] previous finding of competency." (Internal quotation marks omitted.) *State* v. *Jordan*, 151 Conn. App. 1, 37, 92 A.3d 1032, cert. denied, 314 Conn. 909, 100 A.3d 402 (2014).

At the defendant's second competency hearing, the court received evidence that at the beginning of the defendant's inpatient treatment, he demonstrated awareness of the judicial process and of the roles of the court and counsel, as well as his own role in the proceedings, including the importance of working with his attorney. Members of the defendant's treatment team described him as calm and cooperative and capable of advocating for his needs. After several weeks of treatment, however, the defendant began to claim that he was not competent and that he did not understand the criminal process. His treatment team found that these statements were "not credible," unanimously concluding that the defendant was capable of assisting in his defense and competent to stand trial. Hernandez, who testified on behalf of the clinical team, related the observations, findings and conclusions set forth in his report. During his testimony, moreover, and despite having witnessed the defendant's disruptive behavior and resulting removal from the courtroom, Hernandez stated that his conclusion as to the defendant's competency remained unchanged. On the basis of this evidence, the court determined that the defendant's behavior did not constitute evidence of incompetence. The court attributed the defendant's disruptive behavior to his refusal to accept the court's authority and unwillingness to submit to the criminal process.

During subsequent proceedings, the defendant continued to engage in the same types of disruptive behavior that had precipitated his removal from the courtroom during the competency hearing. During voir dire, the defendant refused to change out of his prison clothing and persisted in verbally challenging the court's authority to try him, loudly interrupting the proceedings when he was present. The court inquired of defense counsel whether he had observed any change in the defendant's condition or demeanor since the time he was found competent to stand trial. Defense counsel stated unequivocally that the defendant's demeanor and condition had not changed since that time.

On the first day of evidence, when the defendant refused to come up to the courtroom, the court noted for the record that it did not attribute the defendant's refusal to incompetency. The court further noted that the defendant's conduct stemmed from his refusal to acknowledge or accept the court's jurisdiction and obstreperousness. Defense counsel agreed.

At sentencing, the court heard from the defendant's family members, who confirmed that the defendant's

behavior during the trial had been uncharacteristic of him. Never attributing such behavior to incompetence, they suggested instead that it had resulted from the defendant's frustration with the criminal justice system. When defense counsel also commented on the defendant's frustrations with the system and suggested that they might be "delusional," the court immediately responded that "[r]efusal to accept the court's jurisdiction is not an issue of competency, it's just flat out refusal." Defense counsel, again, agreed.

In the present case, there is no question that the court was alert to the issue of the defendant's competency. Yet, the court rejected the factual premise advanced by the defendant on appeal—that the defendant's conduct was attributable to an underlying mental impairment and resulting incompetence. Instead, it consistently and justifiably found that such conduct was a product of the defendant's deliberate refusal to move forward with his trial. The court expressly confirmed its assessment with the defendant's counsel, who invariably agreed that the defendant's demeanor had not materially changed since the court's previous finding of competency. Indeed, defense counsel attributed the defendant's antics to his "[s]tubbornness." The court was entitled to consider and rely on counsel's representations as a basis for not requiring a reevaluation of the defendant's competency to stand trial. See *State* v. *Paulino*, 127 Conn. App. 51, 65, 12 A.3d 628 (2011) (court entitled to rely on trial counsel's statement that he was not requesting competency hearing as basis for concluding that no such hearing was necessary).

In sum, our review of the record reveals that the court continuously monitored and carefully considered the possible implications of the defendant's midtrial behavior on the issue of his competency to stand trial, and repeatedly sought and received input from defense counsel on that issue to validate its own assessment that such behavior was the product of rational and voluntary, if ill-advised, resistance to authority rather than incompetency. The court did not abuse its discretion in relying upon its own observations of the defendant and the confirmatory input of counsel, considered in the light of the defendant's previous competency evaluation, as bases for not ordering a further evaluation of the defendant's competency during trial. Accordingly, the defendant's claim fails to satisfy *Golding*'s third prong and, thus, must be rejected.

## II

The defendant next claims that the trial court conducted critical stages of the proceedings against him in his absence in violation of his sixth and fourteenth amendment rights. More particularly, the defendant argues that the court allowed him to be tried in absentia, without either advising him of his right to attend such proceedings or canvassing him as to whether he wanted

to waive that right. He therefore claims that he was denied his constitutional right to be present during all critical stages of his prosecution and, accordingly, that this court should grant him a new trial. We are not persuaded.[14]

"We begin with a fundamental tenet of criminal jurisprudence: a criminal defendant has a constitutional right to be present at all critical stages of his or her prosecution. *Rushen* v. *Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) (the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant). Indeed, [a] defendant's right to be present . . . is scarcely less important to the accused than the right of trial itself. . . . *State* v. *Simino*, 200 Conn. 113, 127, 509 A.2d 1039 (1986). Although the constitutional right to be present is rooted to a large extent in the confrontation clause of the sixth amendment, courts have recognized that this right is protected by the due process clause in situations [in which] the defendant is not actually confronting witnesses or evidence against him. *Snyder* v. *Massachusetts*, 291 U.S. 97, 105–106, 108, 54 S. Ct. 330, 78 L. Ed. 674 (1934); see *State* v. *Jarzbek*, 204 Conn. 683, 691–92, 529 A.2d 1245 (1987) (recognizing that right to be present similarly is guaranteed by article first, § 8, of our state constitution), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988)." (Internal quotation marks omitted.) *State* v. *Lopez*, 271 Conn. 724, 732, 859 A.2d 898 (2004).

A defendant in a criminal case may waive fundamental constitutional rights, including his right to be present at trial. See *Talton* v. *Warden*, 171 Conn. 378, 385–86, 370 A.2d 965 (1976). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied." (Internal quotation marks omitted.) Id. Waiver is determined on the basis of the particular facts and circumstances that surround the case. *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

A defendant's deliberate absence constitutes a waiver of the right to be present. In *Taylor* v. *United States*, 414 U.S. 17, 20, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973), the United States Supreme Court found that the defendant "who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at trial," waived his right to be present by failing to appear for his trial. The Supreme Court rejected the defendant's claim that the District Court had an obligation to expressly warn him of his rights and construed his voluntary absence from trial as an effective waiver, finding the suggestion that the defendant entertained any doubt about his right to be present at his trial to be "wholly incredible . . . ." Id.

A defendant may also waive his right to be present at trial by acting in a disruptive and obstreperous manner,

provided that he has been warned that his conduct will result in his removal. For example, in *Illinois* v. *Allen*, 397 U.S. 337, 340, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), the defendant repeatedly interrupted the proceedings, at one point stating, "[t]here's not going to be no trial, either. I'm going to sit here and you're going to talk and you can bring your shackles out and strait jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial." (Internal quotation marks omitted.) The court admonished the defendant, cautioning him that such disruptive conduct would force it to remove him from the courtroom. Id. The defendant persisted in his behavior, and as a result, the court ordered his removal during voir dire examination and the state's case-in-chief. The United States Supreme Court concluded that the defendant could not exercise his constitutional right to remain in the courtroom, having engaged in conduct that rendered it nearly impossible to carry out the trial proceedings. Id., 338.

The Supreme Court opined that "although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights . . . a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Id., 343. The defendant may reclaim his constitutional right to be present if he demonstrates that he is "willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." Id.

Recognizing these well established principles, our rules of practice expressly provide that "[t]he defendant must be present at the trial and at the sentencing hearing, but, if the defendant will be represented by counsel at the trial or sentencing hearing, the judicial authority may . . . [e]xcuse the defendant from being present at the trial or a part thereof or the sentencing hearing if the defendant waives the right to be present . . . ." Practice Book § 44-8. A trial court's finding that a defendant has voluntarily absented himself from the proceedings is reviewed for an abuse of the court's discretion. *State* v. *Simino*, supra, 200 Conn. 132.

Our appellate decisions illustrate the type of conduct that has been deemed to constitute valid waivers of the right to be present at a critical stage of the prosecution. See *State* v. *Jones*, 281 Conn. 613, 640–41, 916 A.2d 17 (defendant initiated his removal from courtroom when he asked to leave courtroom and engaged in altercation with marshals), cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007); *State* v. *Gonzalez*, 205 Conn. 673, 689, 535 A.2d 345 (1987) (defendant forfeited

right to be present by acting in bizarre and disruptive manner); *State* v. *Drakeford*, 202 Conn. 75, 81, 519 A.2d 1194 (1987) (defendant who was removed for interrupting voir dire, and then declined to return when sheriff informed him he could do so, "unequivocally waived his right to attend jury selection").

In the present case, we conclude that the defendant waived his constitutional right to be present by deliberately absenting himself from the proceedings and by behaving in a disruptive manner when he was present so as to prevent his trial from moving forward in an orderly fashion.

During jury selection, the court cautioned the defendant that his disruptive behavior would result in his removal from the courtroom. The defendant challenged the court's authority to move forward with voir dire in his absence.[15] The defendant continued to act out by attempting to discuss the merits of his case with a prospective juror, thereby forcing defense counsel to exercise a peremptory challenge. The court made efforts to accommodate the defendant's behavior by placing him in the room adjacent to the courtroom, where he could observe and hear the proceedings.

During the evidentiary phase of his trial, the defendant chose to absent himself from the proceedings once again.[16] On this occasion, the defendant refused to come up to the courtroom while fully acknowledging and taunting the court as to its alleged violation of the very right he now claims to have been violated. When the defendant finally appeared in the courtroom prior to closing arguments, he expressly stated that, "under the sixth amendment . . . I was supposed to confront those accusation witnesses . . . ."

Later, at his sentencing, the defendant interrupted defense counsel as he attempted to detail for the record the defendant's unwillingness to assist him in reviewing his presentence investigation report. The defendant also interrupted the court as it attempted to impose his sentence, challenging its authority to act and opining at length about the alleged injustice of his prosecution. These outbursts occasioned his removal from the courtroom.

The defendant does not dispute these facts, but urges us to find the court's conduct to have been deficient on the ground that when he refused to come up to the courtroom and engaged in obstructionist tactics that led to his removal, the court had a duty to make further inquiries of him to confirm that he did not want to be present. The defendant submits that a valid waiver of the right to be present requires that the defendant be brought personally before the court, advised of his right to be present, and then permitted to make an intelligent and competent waiver in light of that advisement. The defendant concedes, however, that no such procedure

is required under Connecticut law. See *Talton* v. *Warden*, supra, 171 Conn. 380, 384 (finding waiver where defense counsel informed court that defendant chose not to be present at proceeding he knew was occurring). "[A] trial court need not engage in a colloquy with a defendant expressly focused on the defendant's understanding of his right to be present to determine that a waiver of the right of presence was valid. Rather, the court may infer the defendant's waiver from the totality of his acts and conduct, so long as the defendant has been adequately informed that the trial would continue in his absence." (Internal quotation marks omitted.) *State* v. *Crawley*, 138 Conn. App. 124, 132–33, 50 A.3d 349, cert. denied, 307 Conn. 925, 55 A.3d 565 (2012).[17]

In the present case, the record reveals that the defendant was given ample opportunity to be present, yet he chose to remain in the lockup and to be disruptive while the trial continued in his absence. Moreover, the defendant's argument is particularly unavailing in light of the evidence, which demonstrates his keen awareness of the constitutional principles that he now advances on appeal. "[O]ur courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him." *Illinois* v. *Allen*, supra, 397 U.S. 346. Review of the record suggests, consistent with the trial court's assessment, that the defendant chose to protest the proceedings on the basis of what he perceived to be procedural deficiencies in his prosecution or that he chose to absent himself as part of a flawed strategy to prevent his prosecution from moving forward. Either course of conduct constitutes a waiver of the defendant's constitutional right to be present at trial. "We cannot permit an accused to elect one course at the trial and then . . . to insist on appeal that the course which he rejected at the trial be reopened to him . . . ." (Internal quotation marks omitted.) *State* v. *Drakeford*, supra, 202 Conn. 81.

In sum, the court did not abuse its discretion by proceeding with trial in the defendant's absence. The court was well justified in removing him in the circumstances here presented, and properly did so without making any further inquiries of him as to his awareness of and desire to waive his right to be present at his trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54-56d provides in relevant part: "(a) . . . A defendant shall not be tried, convicted or sentenced while the defendant is not competent. For the purposes of this section, a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"(b) . . . A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and

conduct its own inquiry.

"(c) . . . If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency.

"(d) . . . If the court finds that the request for an examination is justified and that, in accordance with procedures established by the judges of the Superior Court, there is probable cause to believe that the defendant has committed the crime for which the defendant is charged, the court shall order an examination of the defendant as to his or her competency. The court may (1) appoint one or more physicians specializing in psychiatry to examine the defendant, or (2) order the Commissioner of Mental Health and Addiction Services to conduct the examination either (A) by a clinical team consisting of a physician specializing in psychiatry, a clinical psychologist and one of the following: A clinical social worker licensed pursuant to chapter 383b or a psychiatric nurse clinical specialist holding a master's degree in nursing, or (B) by one or more physicians specializing in psychiatry, except that no employee of the Department of Mental Health and Addiction Services who has served as a member of a clinical team in the course of such employment for at least five years prior to October 1, 1995, shall be precluded from being appointed as a member of a clinical team. If the Commissioner of Mental Health and Addiction Services is ordered to conduct the examination, the commissioner shall select the members of the clinical team or the physician or physicians. When performing an examination under this section, the examiners shall have access to information on treatment dates and locations in the defendant's treatment history contained in the Department of Mental Health and Addiction Services' database of treatment episodes for the purpose of requesting a release of treatment information from the defendant. If the examiners determine that the defendant is not competent, the examiners shall then determine whether there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section. If the examiners determine that there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section, the examiners shall then determine whether the defendant appears to be eligible for civil commitment, with monitoring by the Court Support Services Division, pursuant to subdivision (2) of subsection (h) of this section. If the examiners determine that there is not a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section, the examiners shall then determine whether the defendant appears to be eligible for civil commitment to a hospital for psychiatric disabilities pursuant to subsection (m) of this section and make a recommendation to the court regarding the appropriateness of such civil commitment. The court may authorize a physician specializing in psychiatry, a clinical psychologist, a clinical social worker licensed pursuant to chapter 383b or a psychiatric nurse clinical specialist holding a master's degree in nursing selected by the defendant to observe the examination. Counsel for the defendant may observe the examination. The examination shall be completed within fifteen business days from the date it was ordered and the examiners shall prepare and sign, without notarization, a written report and file such report with the court within twenty-one business days of the date of the order. On receipt of the written report, the clerk of the court shall cause copies to be delivered immediately to the state's attorney and to counsel for the defendant.

"(e) . . . The court shall hold a hearing as to the competency of the defendant not later than ten days after the court receives the written report. Any evidence regarding the defendant's competency, including the written report, may be introduced at the hearing by either the defendant or the state, except that no treatment information contained in the Department of Mental Health and Addiction Services' database of treatment episodes may be included in the written report or introduced at the hearing unless the defendant released the treatment information pursuant to subsection (d) of this section. If the written report is introduced, at least one of the examiners shall be present to testify as to the determinations in the report, unless the examiner's presence is waived by the defendant and the state. Any member of the clinical team shall be considered competent to testify as to the team's determinations. A defendant and the defendant's counsel may waive the court hearing only if the examiners, in the written report, determine without

qualification that the defendant is competent. Nothing in this subsection shall limit any other release or use of information from said database permitted by law. . . ."

[2] According to the competency evaluation report, the defendant exhibited symptoms associated with a psychiatric disorder, including "tangential thinking, rapid and pressured speech and an agitated affect."

[3] The defendant banged on the door of the adjacent room until the noise prompted the court to order that he be brought downstairs.

[4] The defendant requested that the court produce "paperwork" from the governor documenting its authority to proceed.

[5] The following exchange occurred between the court and the defendant:

"The Court: If you continue to talk during this I'm going to have to remove you from the courtroom. Do you understand that?

"The Defendant: I'm going to continue doin' this until we get it straight.

"The Court: Then you're going to be removed from the courtroom.

"The Defendant: Until we get this straight, okay.

"The Court: Put him in that room next door so he can watch what's going on.

"The Defendant: Until we get this straight. I'm sick and tired of this."

[6] The record reveals that the defendant expressed his dissatisfaction with his attorney throughout the proceedings, and his attorney repeatedly told the court that the defendant refused to speak to him.

[7] As the defendant was escorted out of the courtroom, he called out, "Bring me downstairs—bring me back downstairs. I don't know why y'all brung me up here, okay. I'm going back downstairs."

[8] The jury was instructed as follows: "The defendant has decided to allow the trial to proceed in his absence. He has a constitutional right to do so. This decision has no bearing on whether he is guilty or not guilty, and you are not to draw any inference unfavorable to the defendant from the exercise of his right." We have no occasion to rule on the propriety of the court's instruction, as no objection to it has been raised on appeal.

[9] The defendant attended the violation of probation hearing.

[10] The record reveals that the defendant told the marshals that he did not want to come back to the courtroom. The court ordered the defendant to be brought back into the courtroom so that he could make a statement to that effect on the record.

[11] The defendant argued with the court about his involvement in the crime, claiming that the victim and the witnesses had fabricated their stories.

[12] Under the *Golding* doctrine, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[13] The defendant contends that this court's review on a question of competency is a mixed question of law and fact that necessarily entails a determination as to whether the evidence before the trial court raised a reasonable doubt about the defendant's competency. Accordingly, the defendant claims that the trial court's determination not to inquire into his competency is an implicit ruling on the sufficiency of the evidence and thus warrants de novo review. The defendant's argument is foreclosed by this court's precedent. See, e.g., *State* v. *Jordan*, 151 Conn. App. 1, 33, 92 A.3d 1032 (whether court abused discretion in failing to order competency evaluation), cert. denied, 314 Conn. 909, 100 A.3d 402 (2014). "[T]his court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *State* v. *Rivera*, 145 Conn. App. 344, 345–46, 76 A.3d 197, cert. denied, 310 Conn. 962, 83 A.3d 344 (2013). Moreover, subsequent to the submission of the defendant's brief, our Supreme Court, although not expressly considering the issue that the defendant has raised on appeal, confirmed that the adequacy of the trial court's inquiry into a defendant's competency and the propriety of its decision not to order a competency evaluation are reviewed for abuse of discretion. See *State* v. *Dort*, 315 Conn. 151, 169, 106 A.3d 277 (2014).

[14] The defendant's unpreserved claim, which arises from the confrontation clause of the sixth amendment and the due process clause of the fourteenth amendment, is of constitutional magnitude and, thus, reviewable pursuant

to *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 5 of this opinion. The state argues that because the defendant does not have a constitutional right to a warning or canvass regarding the constitutional right to be present, his claim is not reviewable. We decline to take such a narrow view. We construe the defendant's claim to be that the court did not take adequate measures to ensure his presence at trial, a right that the state does not contest the defendant was constitutionally entitled to. The defendant's claim is constitutional in scope and, thus, reviewable. Because we conclude, however, that the defendant has failed to show that his constitutional rights were clearly violated by the court's conduct, he cannot prevail. See *State* v. *Golding*, supra, 240.

[15] As noted previously in this opinion, the defendant stated at that time, "Well, ya'll can't go forward without me, so what we going to do?"

[16] The record reveals that the marshals made several attempts to bring the defendant upstairs. The defendant's reaction was hostile—it was reported that the defendant was aware that his trial was scheduled to begin but that he refused to come upstairs. The court then inquired of defense counsel: "It is going to go forward whether he refuses or not. Does he understand that?" Defense counsel responded that he did, but that the defendant refused to speak with him.

[17] We also reject the defendant's claim that a personal rights advisement was required in this instance due to his alleged mental impairment. The court, having determined that the defendant was competent to stand trial, had no further obligation to inquire whether the defendant's self-imposed absences were attributable to an underlying impairment. See *State* v. *Gonzalez*, supra, 205 Conn. 689.

---